170 So.2d 111

**KING FINANCE COMPANY OF LOUISI-ANA, Inc., and King Discount Company of Louisiana, Inc.**

v.

**FIREMAN'S FUND INSURANCE COMPANY.**

No. 47157.

Dec. 14, 1964.

Christensen & Christensen, Siegfried B. Christensen, III, New Orleans, for plaintiffs-appellants.

Curtis, Foster, Dillon & Huppenbauer, Gerard M. Dillon, New Orleans, for defendant and respondent.

HAWTHORNE, Justice.

King Finance Company of Louisiana, Inc., and King Discount Company of Louisiana, Inc., insured under a small loan company blanket bond, filed this suit to recover from Fireman's Fund Insurance Company $2125.00 which they alleged was "taken, stolen, and/or was the object of a theft by a party and/or parties unknown" from one of their branch offices in New Orleans. The provision of the bond under which the plaintiffs seek to recover stipulates that the insurer will indemnify petitioners for:

"B. Any loss of property through robbery, burglary, * * * theft, * * * damage or destruction * * * while the Property is actually within any of the offices of the Insured covered hereunder * * *."

The trial judge dismissed plaintiffs' suit, being of the view that they had not proved their case by a preponderance of the evidence. On appeal the Court of Appeal stated that the sole question presented was whether the proof adduced on the trial was sufficient to warrant a judgment in plaintiffs' favor, and agreed with the trial judge that it was not. See 159 So.2d 708. On application of the plaintiffs this court granted a writ, 245 La. 968, 162 So.2d 15.

There is no serious question of law in this case. The Court of Appeal, citing authorities, stated that the legal principles involved are simply these: Plaintiff bears the burden of proving that the loss was caused by one of the covered risks. The loss and cause of loss do not have to be proved beyond a reasonable doubt but must be proved by a preponderance of the evidence, and circumstantial evidence may be sufficient. But suspicion or speculation as to the cause of loss is not enough, as where evidence merely shows the loss or injury. Mere disappearance is not sufficient evidence of theft. Mere disappearance of an article covered by burglary or theft policy which does not contain a specific provision dealing with its disappearance is not sufficient of itself to warrant a finding that its loss was due to theft, larceny, or burglary within the terms of the policy. The finding of such a felonious abstraction may in a proper case rest upon circumstantial evidence.

The facts are fully set out in the opinion of the Court of Appeal, and we do not propose to reiterate them in detail here. Generally summarized, they are as follows:

When the branch office of the plaintiffs closed at about 5:00 p. m. on October 3, 1961, there was on hand in cash more than $2700.00. Of this amount $2125.00 had been placed in an envelope or loan pocket and put in the middle drawer of a filing cabinet or safe which could be locked with a key. The remaining cash had been placed in a

small iron box in the bottom drawer of this cabinet or safe. During business hours the office had two employees, the manager and a secretary, and according to their testimony both the filing cabinet and the office were locked when they left that day. These employees returned to the office at or before 9:00 o'clock the following morning, and in preparation of the day's business unlocked the safe. During the early afternoon one of them discovered that the loan pocket containing the $2125.00 was missing, this loan pocket having been one of about 400 in the safe drawer. There had been no forcible entry into the office or into the safe where the money had been left the evening before. Only the manager, the secretary, the bookkeeper, and the porter had keys to the office, and only the first three had keys to the safe. The only persons who knew of the practice of putting money into a loan pocket and placing it in the safe among other loan pockets were two officers of the corporations, the manager, the secretary, and the bookkeeper. Plaintiffs' office was a small one, and the safe was under a counter within an enclosed area to which the public had no access. On the day the money was missed only five or six customers came into the office, none of them went into the enclosed space, and there was no time during this period when the office was left unattended by the two employees present.

There is no evidence in this case which would establish theft of the funds by a forcible entry of the office or the safe. Under the circumstantial evidence adduced there is possible the inference that the funds were stolen either by one of the persons having keys to the office and the safe or by some third person who was in the office during business hours on the day the funds were missed. All the persons who had keys to the office or the safe were called as plaintiffs' witnesses, and all denied taking the missing money. Their integrity or honesty is not questioned by the plaintiffs, and the president of the plaintiff corporations himself stated that he had no reason to believe that these persons were dishonest, and that he had no evidence that any of them had ever taken any property belonging to the corporations. Under these circumstances any inference that the missing money was taken by one of these employees is destroyed by evidence adduced by the plaintiffs themselves. There then remains only an inference that the money was taken by some third party, but this inference also is destroyed by plaintiff's own evidence. As stated by the Court of Appeal, "A theft of the money by a customer or a stranger during office hours seems to have been highly improbable, if not impossible. First, he would have had to know that the money was kept in a loan pocket in the safe drawer, which was apparently a closely guarded

secret. Secondly, he would have had to lean well over the railing and then open the safe drawer without being seen or heard by plaintiffs' employees which they said could not well have been done. Thirdly, he would have had to single out the loan pocket containing the money which was sandwiched among 400 similar loan pockets".

■ Thus we can only conclude, as did the district court and the Court of Appeal, that the plaintiffs have not proved by a preponderance of the evidence that their loss was covered by the blanket bond insurance.

■ Plaintiffs-relators argue that in sustaining the judgment of the district court the Court of Appeal did not apply the rule outlined in the case of Holder v. Lockwood, La.App., 92 So.2d 768, to the effect that when an insurer seeks to avoid a circumstantial showing of coverage by setting up an exception in the policy, this constitutes a matter of defense which the insurer must affirmatively prove. The holding in the Lockwood case is not pertinent or applicable to the facts of this case, for the insurance company here is not pleading an exception or exclusion found in the policy in order to avoid payment under the policy.

The judgment of the Court of Appeal is affirmed; relators are to pay all costs.

FOURNET, Chief Justice (dissenting).

This suit was instituted by King Finance Company of Louisiana, Inc., and King Discount Company of Louisiana, Inc., against Fireman's Fund Insurance Company to recover money allegedly stolen from their branch office on Esplanade Avenue in the City of New Orleans on a "Small Loan Companies Blanket Bond" issued by the defendant, the pertinent part of which provides for indemnity to plaintiffs in case of:

"A. Any loss of money * * * through any dishonest or fraudulent act, wherever committed, of any of the Employees, whether acting alone or in collusion with others.

"B. Any loss of property through robbery, burglary, * * * theft, * * * damage or destruction * * while the Property is actually within any of the offices of the Insured covered hereunder * * *."

I fully agree with the holding of the Court of Appeal that the plaintiffs had to prove by a preponderance of the evidence that the loss was caused by one of the covered risks and in the proof thereof, circumstantial evidence may be sufficient. However, I cannot agree that the evidence, as held by the Court of Appeal and affirmed by this court, was not sufficient to establish the loss was occasioned by a risk covered by the bond.

The fact that the plaintiffs placed all persons connected with the office in question, including those having keys to the safe and the office, on the witness stand and that each one denied taking the money, does not, in my opinion, prove the money was not stolen. The conclusion of the Court of Appeal, quoted with approval, that it was highly improbable, if not impossible, to effect a theft by a customer during office hours because he would have to know that the money was kept in a loan pocket among 400 similar pockets in the safe drawer which was a guarded secret between the two full-time employees in the branch office, Mrs. Raynol and Mr. Binney (both of whom had keys to the safe and the office), and furthermore, a customer or intruder could not very well lean over the railing and open the safe drawer without being detected by the plaintiffs' employees, does not, in my estimation, detract from the fact the money was stolen by somebody. The evidence conclusively establishes the *loss* of the cash and specifically excludes all other reasonable hypotheses therefor; i. e., through robbery, burglary, damage or destruction. The only logical conclusion that can be drawn therefore, is that the money was stolen by someone and it is immaterial by whom, whether by one of the persons with a key, one of the employees, or one in concert with the other, or otherwise; it is of no moment.